IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MEEKA GUNN, o/b/o            )
D.E.C.-M., a minor child,    )
                             )
          Plaintiff,         )
                             )            2:13-cv-160-TMP
     vs.                     )
                             )
CAROLYN W. COLVIN,           )
Commissioner of Social Security, )
                             )
          Defendant.         )

# MEMORANDUM OPINION

## I.    Introduction

The plaintiff, D.E.C.-M., a minor, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Children's Supplemental Security Income ("SSI").  See 42 U.S.C. § 1383(c).  The plaintiff, in the action brought by her mother,[1] timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

---

[1] The court will refer to the child, who is represented here by her mother, as the plaintiff. Plaintiff's mother will be referred to as Ms. Gunn.

Plaintiff was a school-age child, 12 years old, at the time of the Administrative Law Judge's ("ALJ") decision. She claims to be disabled, beginning at age 7, because of borderline intellectual functioning, depression, attention deficit hyperactivity disorder ("ADHD"), and post traumatic stress disorder ("PTSD").

When evaluating the disability of a child under the Social Security Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that cause marked and severe limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.[2] A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. In evaluating a child's claims, the regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a); *see e.g. Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F. Supp. 2d 1239, 1241 (N.D. Ala. 2006).

The first step requires a determination of whether the claimant is engaging in "substantial gainful activity," which is defined as work activity that involves doing

---

[2] There is no dispute that the plaintiff's mental conditions have persisted for more than 12 months.

significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If he or she is, the claimant is not disabled and the evaluation stops. 20 C.F.R. § 416.924(b). At the second step, the ALJ must determined whether a child has a medically determinable impairment or a combination of medical impairments that are "severe." 20 C.F.R. § 416.924(c). "Severe" requires that the child have a medically determinable impairment or combination of impairments that are more substantial than a slight abnormality that causes only minimal functional limitations. *Id.* If the claimant's impairments are not severe, the analysis stops. *Id.*

If the severity requirement is met, the analysis continues to step three, which is a determination of whether the child's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924(d). If the claimant's impairments meet a listing, he or she will be found disabled without further consideration. Alternatively, if the child's impairment or combination of impairments functionally equal a listing, he or she will be declared disabled. *Id.* In determining whether the impairments meet a listing, the ALJ must consider the child's functional capacity with regard to six domains.[3] 20 C.F.R. §

---

[3] A domain is a broad area of functioning. The six domains considered are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

416.926a. To functionally equal a listing, the child's impairment or combination of impairments must result in "marked" limitations in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A finding of "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. § 416.926a(c). The regulations recognize that an impairment or combination of impairments may have

an effect in more than one domain; thus, the SSA evaluates a child's impairments in any domain in which they cause limitations. 20 C.F.R. at § 416.926a(c).

Applying the sequential evaluation process, the ALJ found that plaintiff has not engaged in substantial gainful activity and has a combination of severe impairments that satisfies step two of the analysis. (Tr. at 28). The ALJ found that plaintiff's borderline intellectual functioning and her ADHD were "severe." However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 29). He noted that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" and that "neither the claimant nor her attorney contend so." (Tr. at 29). The ALJ further found that the impairments did not functionally equal the listings of 20 C.F.R. § 416.924(d) and 926(a). In examining the six domains, the ALJ determined that the plaintiff had "less than marked limitation in acquiring and using information," based upon his examination of her school records, showing that her grades had progressed with treatment and that she was able to do well when given time to complete her work. (Tr. at 32). He further found that she showed "less than marked limitation in attending and completing tasks," relying upon the reported improvements in her school performance and behavior. (Tr. at 33). The ALJ found that plaintiff had "less than marked limitation" in her interactions with others, noting

that her family therapy and her medication helped her to control her behavioral problems. (Tr. at 34). The ALJ further determined that plaintiff had no limitations in "moving about and manipulating objects," and "caring for [her]self," and had not made any such allegations. (Tr. at 34). The ALJ thus determined that the claimant had not been disabled, as defined in the relevant Social Security law and regulations, since the date the application was filed.

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).[4] Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The Court

---

[4] The legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI under the Act. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Citations in this opinion that may relate to DIB claims should be considered to refer to the appropriate parallel SSI related authority. The same applies to citations of statutes or regulations found in quoted court decisions.

approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Gunn alleges that the ALJ's decision should be reversed and remanded because, she asserts, the ALJ's decision regarding severe impairments and functional equivalence are not supported by substantial evidence. (Doc. 12, p. 5). Specifically, she argues that the ALJ failed to comply with SSR 09-1p by failing to consider the "whole child," and that he failed to properly credit the opinion of one of the child's teachers and the report of the consultative psychologist. (Doc. 12, pp. 5-7).

The Court must also be aware of the fact that opinions such as whether a plaintiff is disabled are not " medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Supplemental Security Income benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

#### A. Weight Given to Dr. Lowery's Report

At the request of the Social Security Administration, claimant underwent a consultative psychological examination performed by Dr. Dan Lowery. Claimant's

mother reported to Dr. Lowery that she had "depression and bipolar disorder and has difficulty getting along with boys." (Tr. at 238). She further reported that the child was disruptive in class, was verbally aggressive with siblings, cried, was moody, had difficulty sleeping, had a poor appetite, and was unable to concentrate. *Id.* She further reported that her daughter had been sexually abused at age 7 by the mother's boyfriend, and that she had lived with relatives and in foster homes for a few years after that until the mother regained custody. *Id.* The claimant also described to Dr. Lowery manic episodes, frequent nightmares, and flashbacks. *Id.* She reported that she took Focalin and Seroquel, and that she was compliant, although she had not taken her medication the day of the interview. (Tr. at 239). Dr. Lowery noted that, at the interview, plaintiff was appropriately groomed, was "attentive and cooperative," coped well when her mother refused to let her play games in the waiting room, and showed a "stable" mood. (Tr. at 239-40).

Dr. Lowery found the claimant to be well-oriented to time, place and person, but noted that her concentration and attention "were difficult to assess." He noted that she was able to answer some basic arithmetic problems, but had problems with questions regarding making change. Her memory was normal, her "general fund of information" was consistent with her level of education, and her thought process was "logical, coherent, and goal-directed." (Tr. at 240). Dr. Lowery administered the

Wechsler Intelligence Scale for Children, a widely used IQ test, and found her cooperative but hyperactive. She received a full-scale IQ score of 68. (Tr. at 241). Dr. Lowery noted that she likely would have scored higher had she taken her medication that day, and further noted that "adaptive functioning testing is required to diagnosis MMR; borderline functioning is suspected." (Tr. at 241).

Dr. Lowery's diagnostic impressions, based upon the interview and test, were that she had ADHD, with PTSD suspected, along with "rule out" findings as to bipolar disorder and mild mental retardation.[5] He further noted that she had academic and behavioral problems, and he assigned to her a Global Assessment of Functioning ("GAF") score of 50. *Id.*

The Eleventh Circuit Court of Appeals has noted that the GAF scale is of very limited application to a disability finding in that the score has no "direct correlation to the severity requirements of the mental disorders listing." *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 (2005)(in which the claimant's score was 50-55). *See also*, *Oates v. Astrue*, 2009 WL 1154133 *6-7 (S.D. Ala. April 27, 2009)(in which the claimant was

---

[5] A "rule out" diagnosis indicates that the medical provider found information to suggest such a disorder, but had insufficient information to diagnose it. A "suspected" diagnosis indicates that there is more information to support a diagnosis than when the "rule out"diagnosis, is used; but there is not enough information to decisively state that the patient has the disorder or disease.

given one score as low as 25). Another court within this district has examined the importance to be placed on a GAF of 50:

> The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM−IV"). A GAF of 41−50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM−IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and of itself **determinative** of disability. *See Hillman v.Barnhart*, 48 Fed.Appx. 26, 30, n.1 (3d Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); *Rutter v. Comm'r of Soc. Sec.*, 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir.1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); *Roemmick v. Shalala*, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n. 1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); *Seymore v. Apfel*, 131 F.3d 152 (Table), 1997 WL 755386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); *Stalvey v. Apfel*, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir.1999)("The GAF is not an absolute determiner of ability to work."). *But cf. Lloyd v. Barnhart*, 47 Fed. Appx. 135, 135, n.2 (3rd Cir. 2002)(not precedential) (noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

*Jones v. Astrue*, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007).

Page 11 of 17

In this case, the claimant's attorney argues that the ALJ findings are inconsistent with Dr. Lowery's GAF score, which the attorney argues indicates "serious symptoms including suicidal ideation and/or serious impairment in school functioning." Dr. Lowery's report, however, did not find that the child had any suicidal ideation. To the contrary, he noted that her "thought process appeared logical, coherent, and goal-directed," and that she "denied experiencing depressive cognitions." (Tr. at 240). The ALJ noted that Dr. Lowery's findings were "consistent with the record as a whole," giving "considerable weight" to the finding, except that he did not credit the IQ score. (Tr. at 31). He noted that Dr. Lowery opined that the claimant had not taken her medication, which was prescribed to treat her ADHD. He further noted that Dr. Lowery stated that claimant's test scores likely would have been higher had she taken her medication. The ALJ explained that his assessment of the claimant's IQ was worthy of "no weight" both because Dr. Lowery noted the hyperactivity on that date and because an IQ test given a month later resulted in a considerably higher score of 75. (Tr. at 31).

In light of the entire record, the court finds that the ALJ properly assessed the report of Dr. Lowery, and that his finding regarding the weight to be given to that report was supported by substantial evidence.

### B. Weight Given to Ms. Langford's Assessment

Counsel further asserts that the ALJ's functional equivalence findings "conflict with the opinion offered by the school." (Doc. 12, p. 6). Specifically, the plaintiff asserts that the ALJ failed to place sufficient weight on the questionnaire submitted by a teacher, Kimyum Langford. (Tr. at 144-151). Because Ms. Langford's assessment was inconsistent with other evidence in the record, counsel argues that the ALJ should have sought the opinion of a "medical expert with expertise in mental health." (Doc. 12, p. 10).

It is true that the ALJ gave "no significant" weight to Ms. Langford's notations assigning "serious to very serious problems in Domains I, II, and III," (Tr. at 30). He noted, however, that Ms. Langford had known the claimant for only 12 days. Prior to the report by Ms. Langford, the claimant's academic performance had been fair, and her record of disruptive behavior, as reflected in suspensions, had improved. Claimant's report card from a month before Ms. Langford's assessment showed that the claimant had received one A, three Bs, five Cs, and two Ds. (Tr. at 179). Her grades before transferring to the school where Langford taught were one A, six Bs, and one C. (Tr. at 186). Her attendance record was generally good.

The ALJ properly considered Ms. Langford's report, and provided a detailed analysis and reasoning for according to it "no significant weight." He further

considered all of the other academic and medical records, including the disability evaluation form prepared by Lee Blackmon, M.D. The ALJ simply found that, based upon all the evidence, the claimant's conditions are not so severe as to render her disabled.

Although claimant argues that the ALJ had a duty to further develop the record, such supplementation is not required where the record contains sufficient evidence from which the ALJ may make an informed decision. *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ's failure to seek an opinion from yet another mental health expert, having already considered the opinions of Dr. Lowery, Dr. Blackmon, and the plaintiff's treating physicians and therapists, provides no basis for the remand or reversal of his decision.

### C. Severity of Claimant's medical conditions

The plaintiff further argues that the ALJ failed to properly find that the claimants PTSD was sufficiently severe. The medical evidence provided, and the ALJ's discussion, indicate that the ALJ properly evaluated plaintiff's mental and psychological conditions. Although Dr. Lowery diagnosed "suspected" PTSD, the only symptoms reported to Dr. Lowery, or otherwise present in the medical records, are trouble sleeping, nightmares, and flashbacks to the abuse. The nightmares and trouble sleeping could not be determined to be highly problematic in light of Ms.

Gunn's report that her daughter sleeps more than 9 hours per night. Dr. Kahn, a treating physician, had noted that plaintiff was sleeping better after she was prescribed Seroquel. There is nothing in the evidence made part of this record that suggest that the PTSD caused any symptoms more severe than nightmares and flashbacks, or that the nightmares or flashbacks had any significant effects on the child's functioning. The ALJ relied upon records from Drs. Lowery, Blackmon, and Kahn to support his conclusion that the child was progressing in both academics and behavior, was receiving medications that helped her, and was successfully participating in mental health counseling and family therapy. The ALJ further relied upon plaintiff's own testimony that her daughter did her homework, helped with chores at home, read, and had improved with medication and counseling. Accordingly, the ALJ's determination is supported by substantial evidence. The decision was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that claimant's conditions did not cause disabling limitations.

### C. Application of the Correct Legal Standard

Ms. Gunn asserts that the ALJ applied improper legal standards in assessing plaintiff's disability. The proper legal framework for determining whether a child is disabled is set forth *supra*. The ALJ applied the proper legal methodology in

concluding that the plaintiff is not disabled within the meaning of the Social Security Act. The ALJ first found that plaintiff has never been employed, satisfying the first element. The ALJ then found that plaintiff has severe impairments, as required at the second step. Then he determined that plaintiff's impairments neither meet, medically equal, nor functionally equal an impairment listed by the Secretary. (Tr. at 28-29). Because the ALJ appropriately applied the statutory disability framework for children and correctly considered the requirements needed to find a functional equivalent to a listing, he did not err in making his determination that plaintiff was not disabled.

### IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Gunn's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

DATED the 31st day of March, 2014.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE